## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Mike Karlinski, individually and on behalf of all others similarly situated, | 1:21-cv-03813 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Costco Wholesale Corporation, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Costco Wholesale Corporation ("defendant") manufactures, labels, markets and sells ice cream bars purporting to be dipped in "Chocolate," presented with chunks of chocolate and other ingredients – vanilla beans and flowers and almonds, under the Kirkland Signature brand ("Product").



## I.    DEFINITION OF CHOCOLATE

2.    Chocolate is defined by Merriam-Webster as a food "prepared from ground roasted cacao beans."

3.    Dictionary.com defines chocolate as a "a preparation of the seeds of cacao, roasted, husked, and ground, often sweetened and flavored, as with vanilla."

4.    The Cambridge Dictionary describes chocolate as "a sweet, usually brown, food made from cacao seeds, that is usually sold in a block, or a small candy made from this."

5.    Google Dictionary – based on its leading search engine that discovers the most relevant and accurate information – defines chocolate as "a food preparation in the form of a paste or solid block made from roasted and ground cacao seeds, typically sweetened."

6.    To make chocolate, cacao beans are "Fermented, roasted, [and] shelled," producing cacao nibs.

7.    The nibs are ground to produce cocoa mass or chocolate liquor and then combined with dairy ingredients, sweeteners and flavorings.

8.    This state, and the Food and Drug Administration ("FDA"), adopted these dictionary definitions to define chocolate as made from cacao beans with a small amount of optional ingredients, like dairy products, sweeteners and flavorings. See 21 C.F.R. § 163.130(a).

9.    While a definition draws a sharp boundary around a term to provide meaning, words are also defined by what they exclude.[1]

10.    In the context of chocolate, all definitions universally exclude fats from sources other than cacao ingredients, namely, vegetable fats (oils).[2]

---

[1] Carnap and Bar-Hillel.

[2] Vegetable oils are sometimes referred to as vegetable fats because they may be solid at room temperature.

11.     Federal and state regulations require that where a food has some chocolate but is mainly vegetable oils, this should be disclosed to consumers. 21 C.F.R. § 163.155(c).

## II.     CONSUMERS EXPECT CHOCOLATE TO BE MADE FROM CACAO BEANS

12.     Historians of chocolate note that "Mixing unnatural ingredients with chocolate – with the intent of extending the quantity of raw product and defrauding customers – has a long history."[3]

13.     The main adulterants and extenders were starches and vegetable fats.

14.     In 2007, a group of the largest confectionery companies sought to re-define chocolate by replacing cacao ingredients with "cocoa butter equivalents" ("CBE"), or vegetable fats.

15.     Over thirty-thousand Americans submitted critical comments, crashing the FDA's website.

16.     In an interview on National Public Radio ("NPR"), Cybele May, proprietor of a website devoted to reviews of candy, was asked, "if it's labeled chocolate, [does] it has to have cocoa butter in it?"[4]

17.     May replied, "Absolutely, and it cannot contain other vegetable oils. It has to be completely from the cocoa bean."

18.     The Los Angeles Times reported on the attempted change to the meaning of chocolate.

19.     According to one consumer interviewed, "The idea of substituting vegetable oil for cocoa butter, a natural component of the cocoa bean that is the traditional source of chocolate," "would [make her] feel like [she] was being duped."[5]

---

[3] L.P. Brindle and B.F. Olsen, Adulteration – The Dark World of 'Dirty' Chocolate," in Chocolate (eds. L.E. Grivetti and H.Y. Shapiro) (2009).

[4] Rebecca Roberts, An Argument Against 'Healthy' Chocolate, Talk of the Nation, Apr. 24, 2007, NPR; candyblog.net.

[5] Jerry Hirsch, The Courage of their Confections, Apr. 14, 2007, Los Angeles Times.

20.     One chocolatier commented, "This is all a question of money. If they can take something and dilute it, and still get the taste [for] a fraction of the cost, that's what they want. But the taste is not the same, he and others said."

21.     San Francisco-based Gary Guittard, "president of his eponymous, family-owned business [Guittard Chocolate Co.], [saw] this as a battle for the soul of the popular confection."

22.     Fran Bigelow, of Seattle's Fran's Chocolates, was asked if she would "ever use vegetable fats and oils instead of cocoa butter in [her] chocolate?," and responded, "No, no, no…we just are fighting to protect the integrity of chocolate," by "educat[ing] consumers."

23.     The proposal was defeated, in part due to chocolate colossus and industry leader, Mars Wrigley, which stated:

> At Mars, the consumer is our boss, and American consumers are passionate about chocolate. They don't want anyone to change the chocolate they've enjoyed for generations…As a privately held company, we have the freedom to invest in the highest quality chocolate and deliver what consumers want.

24.     Recent consumer surveys, including one of over four hundred Americans, reached the same conclusions.

25.     Roughly sixty percent of respondents who viewed the Product's front label chocolate statements with chunks of chocolate – expected it would contain more cacao bean ingredients than it did and would not be made with chocolate substitutes.

## III.    REASONS WHY CONSUMERS WANT CHOCOLATE FROM CACAO BEANS

26.     For several reasons, consumers are misled when a food represented as containing chocolate replaces cacao beans with soybeans, or other vegetable oils.

27.     First, cacao ingredients are several times more expensive than vegetable oils.

28.     Though cocoa butter makes up one-fourth of chocolate, it costs more than three times as much as vegetable oil.

29.     Bigelow stated, "there's no benefit to the consumer [to eliminate cacao ingredients], but there's a benefit to the manufacturers that are using those vegetable oils or the lower-cost ingredients."

30.     Second, cacao ingredients provide greater satiety than vegetable oils – they are more filling, instead of leaving the consumer feeling like they did not eat anything or ate less, even though their caloric contents are roughly similar.

31.     The result is greater consumption of empty calories.

32.     Third, the creamy and smooth taste of chocolate is eliminated when vegetable oils are added in place of the cocoa butter from chocolate from cacao beans.

33.     The substitution of vegetable oils – in amounts as low as five percent – contribute to a waxy and oily mouthfeel and leave an aftertaste.

34.     Cocoa butter, according to Jay King, the president of the Retail Confectioners International, "is the essence of the taste, texture and 'mouth feel'" of chocolate.

35.     Though proponents of the plan to add vegetable oils to chocolate claimed consumers "won't notice if they change it," Jean Hammond of Kilwin's Ice Cream Shops, disagreed:

> Just that little bit of vegetable oil changes the mouthfeel. It makes it taste waxy. You would just be stunned at the difference in taste. They're just not comparable We take chocolate just very, very seriously. Chocolate-ish is not good enough.

36.     Fourth, chocolate has health and nutrition benefits that vegetable oils lack.

37.     Numerous studies have indicated that flavonoids in cacao beans positively affect the heart and arteries against harmful free radicals.

38.     Vegetable oils raise cholesterol, contain artery-clogging trans-fats and saturated fats, and are linked to higher rates of heart disease.

39.     Cocoa butter contains relatively heart-healthy, unsaturated fats, which does not cause elevated cholesterol or greater risks of heart disease.

5

40.     Fifth, chocolate is a natural ingredient, while vegetable oils are made through synthetic means.

41.     Consumers across all demographics increasingly prefer foods that are natural and avoid highly processed synthetic ingredients made with additives.

42.     Chocolate is made through fermentation, roasting, and grinding of cacao beans.

43.     In contrast, vegetable oils are highly refined and bleached, subjected to hydrogenation and interesterification, with chemical catalysts, such as nickel and cadmium.

## IV.   THE "CHOCOLATE" IS MOSTLY VEGETABLE OILS

44.     The representation as "Chocolate [Almond] Dipped," with pictures of chocolate and other key ingredients, is false, deceptive and misleading because the "Chocolate" is mainly the opposite of chocolate – vegetable oils.

**INGREDIENTS:**
**ICE CREAM:** Cream, Milk, Nonfat Milk, Sugar, Egg Yolk, Vanilla Extract.

**MILK CHOCOLATE FLAVORED COATING WITH ALMONDS:** Coating (Sugar, Coconut Oil, Nonfat Dry Milk, Unsweetened Chocolate, Soybean Oil, Unsweetened Chocolate Processed With Alkali, Soy Lecithin), Roasted Almonds (Almonds, Cottonseed Oil).

45.     This is determined based upon a close examination of the ingredient list, which identifies the ingredients in order of predominance by weight. 21 C.F.R. § 101.4(a)(1).

46.     The ingredient touted on the front label as "Chocolate" is now identified only as "Milk Chocolate Flavored Coating With Almonds."

47.     The components of the "Coating" are listed separately from the "Roasted Almonds."

48.   That the Coating's "chocolate" contains mainly chocolate substitutes – vegetable oils – is demonstrated by applying mathematical logic to the applicable regulations.

| Order | Ingredients | Amounts (g) | Description |
|-------|-------------|-------------|-------------|
| 1 | Sugar | 10 | |
| 2 | Coconut Oil | 9 | Vegetable Oils |
| 3 | Nonfat Dry Milk | 8 | |
| 4 | Unsweetened Chocolate | 7 | Chocolate |
| 5 | Soybean Oil | 6 | Vegetable Oils |
| 6 | Unsweetened Chocolate Processed With Alkali | 5 | Chocolate |
| 7 | Soy Lecithin | 4 | |

49.   Sugar is the most predominant ingredient and assigned a theoretical amount of 10 g.

50.   This means no other ingredient can weigh as much as 10 g.

51.   The amounts of the other ingredients decrease by one gram based on their order in the ingredient list.

52.   This logical experiment confirms that the cheaper chocolate substitutes – "Coconut Oil" and "Soybean Oil" – are present in an amount greater than cacao bean ingredients – "Unsweetened Chocolate" and "Unsweetened Chocolate Processed With Alkali."

| | Amounts (g) |
|---|---|
| Total Vegetable Oils | 15 |
| Total Cacao Bean Ingredients | 12 |

53.   The second most predominant ingredients in the Coating are sugar and coconut oil.

54.   However, this analysis overstates the amount of chocolate in the Product.

55.   The ingredient list misidentifies the sixth ingredient, "unsweetened chocolate

processed with alkali."

56. Chocolate has two main components – cocoa solids and cocoa butter.

57. Cocoa solids (or cocoa powder) provide flavor, while cocoa butter provides a rich texture.

58. Since cocoa powder can have a strong taste, it is sometimes processed with alkali ingredients.

59. Chocolate is not processed with alkali, but cocoa powder is.

60. Therefore, the ingredient identified as "unsweetened chocolate processed with alkali" is not chocolate, but cocoa powder.

61. This means that the Product contains even less chocolate than otherwise assumed, because cocoa powder lacks cocoa butter.

62. The pictures of the ingredients on the front label – chunks of chocolate, vanilla beans and a vanilla flower and almonds – tells consumers the Product will contain non-de minimis amounts of these highlighted ingredients.

63. While this appears true for vanilla and almonds, it is false for chocolate.

64. Consumers expect that companies – especially larger and respected businesses, like Costco – to tell them the truth, not half-truths.

65. Consumers of a premium ice cream bar, under the Kirkland Signature brand, will not be so distrustful to scrutinize the fine print of the ingredient list to confirm the front label is accurate.

66. Guittard stated that nothing prevents a company from making a product without actual chocolate, but it "has to be labeled 'chocolate flavored' (for it still has the cocoa in it) rather than 'chocolate.' That gives the consumer a signal that something less than chocolate lies beneath

8

the wrapping."

67.    While the Product's ingredient list may give that "signal," this is expected and required to be disclosed prominently on the front of the label, as "milk chocolate and vegetable oil coating." 21 C.F.R. § 163.155(c).

68.    Even chocolate aficionados such as Cybele May indicated that expectations for chocolate are so well-established that she "do[es]n't want to have to flip over the chocolate bar to read the ingredients to know what I'm getting. I want to know on the front that it is chocolate with cocoa butter."

69.    Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of the Product.

70.    The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

71.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

72.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

73.    The Product is sold for a price premium compared to other similar products, approximately $14.99 per box of 18 bars (55.8 OZ), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

74.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

75.    Upon information and belief, the aggregate amount in controversy exceeds $5

million, including any statutory damages, exclusive of interest and costs.

76.    Plaintiff Mike Karlinski is a citizen of Illinois.

77.    Defendant Costco Wholesale Corporation is a Washington corporation with a principal place of business in Issaquah, King County, Washington.

78.    The parties are citizens of different states.

79.    Venue is proper because plaintiff resides in this district and a substantial portion of the events giving rise to the claims occurred in this district.

Parties

80.    Plaintiff Mike Karlinski is a citizen of Darien, DuPage County, Illinois.

81.    Defendant Costco Wholesale Corporation, is a Washington corporation with a principal place of business in Issaquah, Washington, King County.

82.    Defendant operates close to six hundred warehouse stores in the United States.

83.    Defendant's business model is based on an annual membership fee of $60.

84.    By using the membership fee as a source of revenue, Defendant sells higher quality goods at lower prices than competitors, because it does not need to maximize profit on every item.

85.    The Product is available at Defendant's stores within this state.

86.    Through the internet, even non-members are able to purchase the Product by using grocery delivery services such as Instacart.

87.    Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at defendant's stores at locations including 1320 Illinois Rte 59, Naperville, IL 60564, in April 2021, among other times.

88.    Plaintiff bought the Product at or exceeding the above-referenced price.

89.    All purchases at Defendant's stores require scanning of a member's identification

card, and Defendant's database stores and maintains the member's purchase history – products, prices, quantities and dates.

90. Plaintiff is a Costco member.

91. Plaintiff has been required to scan his membership card and/or provide his member number every time he buys anything at Costco, including the Product.

92. Defendant knows when, where, how many times, and how much Plaintiff paid for the Product.

93. Plaintiff sought to purchase a product with a materially greater amount of chocolate – understood by him and reasonable consumers as consisting of mainly cacao ingredients like cocoa butter – than the Product contained.

94. Plaintiff saw the chunks of chocolate on the front label and expected the Product's chocolate coating would be made from chocolate from cacao beans, not soybeans.

95. Plaintiff did not observe pictures of soybean oil or coconut oil on the front label.

96. Plaintiff expected a product that tasted like chocolate.

97. Plaintiff wanted more than a "chocolatey" taste, though he failed to receive such a taste, because the Product was mainly vegetable oils, which resulted in a waxy and oily taste.

98. Plaintiff expected the Product's coating would contain an appreciable amount of chocolate ingredients.

99. Plaintiff relied on the front label, which references "chocolate" even though the Product contained a negligible amount of chocolate from cacao beans and omits mentioning the greater amount of lower cost chocolate substitutes – vegetable oils.

100. Plaintiff is not a nutritionist, food scientist, or labeling expert, but a lay consumer, who did not have Defendant's specialized knowledge regarding the ingredients in the Product and

how to truthfully calculate that the amount of chocolate was de minimis.

101. Plaintiff would not have purchased the Products if he knew the representations were false and misleading.

102. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

103. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

104. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition.

<u>Class Allegations</u>

105. The class will consist of all Illinois residents who purchased the Product during the statutes of limitations for each cause of action alleged.

106. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

107. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

108. Plaintiff is an adequate representative because his interests do not conflict with other members.

109. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

110. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

111. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

112. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

113. Plaintiff incorporates by reference all preceding paragraphs.

114. Plaintiff and class members desired to purchase a Product with a coating that contained mostly or all chocolate ingredients from cacao beans instead of mainly substitutes such as vegetable oils and soybeans.

115. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

116. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

117. Plaintiff relied on the representations.

118. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,<br>Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

119. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it's coating contained mostly or all chocolate ingredients from cacao beans instead of mainly substitutes such as vegetable oils and soybeans.

120. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

121. This duty is based on Defendant's outsized role in the market for this type of Product.

122. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

123. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

124. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

125. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

126. Defendant had a duty to truthfully represent the Product, which it breached.

127. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

128. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

129. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

130. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

131.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that they contained mostly or all chocolate ingredients from cacao beans instead of mainly substitutes such as vegetable oils and soybeans

132.  Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

133.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: July 18, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

16