**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MIKE KARLINSKI, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:21-cv-03813 |
| v. | Hon. Charles R. Norgle |
| COSTCO WHOLESALE CORPORATION, | |
| Defendant. | |

## ORDER

Defendant's motion to dismiss for failure to state a claim [10] is granted with prejudice. Civil case terminated.

## MEMORANDUM OPINION

Plaintiff Mike Karlinski brings this putative class action against Defendant, Costco Wholesale Corporation. Defendant sells chocolate dipped vanilla ice cream bars. According to Plaintiff, the product's labeling is false, deceptive, and misleading to consumers because the chocolate in the ice cream coating is made mostly of vegetable oils rather than mostly or entirely chocolate ingredients made from cacao beans. Dkt. 1 ¶¶ 44, 114. Plaintiff defines the class as all Illinois residents who purchased the product during the statute of limitations for each cause of action. Id. ¶ 105. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

Plaintiff asserts the following claims on behalf of himself and the class: (1) breach of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) violation of the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*; (5) negligent

1

misrepresentation; (6) common law fraud; and (7) unjust enrichment. Plaintiff requests monetary

damages and injunctive relief. Defendant moves to dismiss the complaint in its entirety for failing

to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

Dkt. 10. For the reasons stated below, the Court grants Defendant's motion.

## I. BACKGROUND

Defendant manufactures, markets, and sells ice cream bars with labels stating, "Chocolate

Almond Dipped Vanilla Ice Cream Bars" (the "Product"). Plaintiff provides the following images

of the Product:



Dkt. 1 ¶ 1, 44.

Defendant is a Washington State corporation with a principal place of business in Issaquah,

Washington. Id. ¶ 81. Plaintiff, who purchased the product, is a Costco member and a citizen of

Darien, Illinois. Id. ¶¶ 80, 87, 90.

Plaintiff contends that the Product's label is misleading because the coating is not, in fact,

chocolate but mainly vegetable oils. Id. ¶ 44. Chocolate is made from cacao beans which are

fermented, roasted, and shelled, producing cacao nibs. Id. ¶ 6. These nibs are "ground to produce

cocoa mass or chocolate liquor and then combined with dairy ingredients, sweeteners, and flavorings." Id. ¶ 7. According to the Plaintiff, all definitions of chocolate universally exclude fats from sources other than cacao ingredients, in particular vegetable oils. Id. ¶¶ 2–5, 10 (citing dictionary definitions of chocolate: Merriam-Webster - "prepared from ground roasted cacao beans"; Dictionary.com - "a preparation of the seeds of cacao, roasted, husked, and ground, often sweetened and flavored, as with vanilla"; The Cambridge Dictionary - "a sweet, usually brown, food made from cacao seeds, that is usually sold in a block, or a small candy made from this"; and Google - "a food preparation in the form of a paste or solid block made from roasted and ground cacao seeds, typically sweetened"). Plaintiff also alleges that the State of Illinois and the Food and Drug Administration ("FDA") adopted these chocolate definitions, to define chocolate as made from cacao beans "with a small amount of optional ingredients, like dairy products, sweeteners, and flavorings." 21 C.F.R. § 163.130(a); Dkt. 1 ¶ 8. When a food includes chocolate but is comprised mostly of vegetable oils, this fact should be disclosed under federal and state regulations. Id. at ¶ 11; 21 C.F.R. § 163.155(c). Plaintiff argues that the "milk chocolate and vegetable oil coating" must be disclosed "prominently on the Product's front label" under federal regulations. 21 C.F.R. § 163.155(c). Dkt. 1 ¶ 67.

According to Plaintiff, consumers expect chocolate to be made from mostly or entirely cacao bean ingredients rather than vegetable oil, as indicated by historians of chocolate, chocolatiers, consumer interviews, and thirty-thousand critical comments to a redefinition of the FDA's definition of chocolate in 2007. Dkt. 1 ¶¶ 12–24. Plaintiff alleges that approximately sixty percent of four-hundred respondents who viewed the Product's front label "expected it would contain more cacao bean ingredients than it did and would not be made with chocolate substitutes." Id. ¶¶ 24–25.

3

Plaintiff highlights the benefits of using cacao ingredients and the disadvantages of vegetable oils to explain why consumers would want chocolate made from cacao beans. Plaintiff alleges when vegetable oils are added in place of cacao ingredients, the creamy and smooth taste of chocolate goes away. Id. ¶ 32. According to Plaintiff, substituting vegetable oils for cacao ingredients, even in amounts as low as five percent, create a "waxy and oily mouthfeel," which leaves an aftertaste. Id. ¶ 33. Vegetable oil also "raise[s] cholesterol, contain[s] artery-clogging trans-fats and saturated fats, and [is] linked to higher rates of heart disease." Id. ¶ 38. On the other hand, Plaintiff states cocoa butter does not elevate cholesterol or pose heart disease risks, and "chocolate has health and nutrition benefits that vegetable oils lack." Id. ¶¶ 36, 39. Plaintiff also explains that "cacao ingredients are several times more expensive than vegetable oils" and that the beneficiary of the substitution of vegetable oils is the manufacturer, not the consumer. Id. ¶¶ 27–29.

The heart of Plaintiff's claim is that the Product's label is misleading because the "chocolate" coating is mainly comprised of vegetable oils, not actual chocolate. Id. ¶ 44. To reach this conclusion, Plaintiff analyzes the ingredient list, which is required under federal law to be listed "in descending order of predominance by weight." 21 C.F.R. § 101.4(a)(1). No ingredient's weight in the coating can be greater than the weight of the ingredient preceding it—sugar has to weigh more than coconut oil, for example. Plaintiff assigns theoretical weights to the ingredients in the coating based on where they appear in the ingredient list. Plaintiff provides the table below:

| Order | Ingredients | Amounts (g) | Description |
|---|---|---|---|
| 1 | Sugar | 10 | |
| 2 | Coconut Oil | 9 | Vegetable Oils |
| 3 | Nonfat Dry Milk | 8 | |
| 4 | Unsweetened Chocolate | 7 | Chocolate |
| 5 | Soybean Oil | 6 | Vegetable Oils |
| 6 | Unsweetened Chocolate Processed with Alkali | 5 | Chocolate |
| 7 | Soy Lecithin | 4 | |

Dkt. 1 ¶ 48. Plaintiff starts with assigning a "theoretical amount of 10 g" to sugar and then decreases in increments of one gram. Id. at ¶¶ 48–49. Notably, Plaintiff does not provide a description for the other ingredients—sugar, nonfat dry milk, and soy lecithin. Plaintiff concludes that the coating contains more vegetable oil than chocolate by adding the "cacao bean ingredients" and comparing them with the amount of "vegetable oils":

| | Amounts (g) |
|---|---|
| Total Vegetable Oils | 15 |
| Total Cacao Bean Ingredients | 12 |

Id. at ¶ 52.

Plaintiff posits that the Product's pictures of ingredients of chunks of chocolate, vanilla beans, and almonds on the bottom of the label "tells consumers the Product will contain non-de minimis amounts of these highlighted ingredients." Id. ¶ 62. And while "this appears true for vanilla and almonds, this is false for chocolate." Id. ¶ 63.

Finally, Plaintiff contends that the value the Plaintiff received for the Product "was materially less than its value represented by [D]efendant." Id. ¶ 70. Defendant was able to sell

5

more of its product at higher prices at the expense of consumers. Id. ¶ 71. If Plaintiff and the class members had known that the chocolate was mostly comprised of vegetable oils, "they would not have bought the Product or would have paid less for it." Id. ¶ 72.

## II. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-557 (2007). This statement must provide sufficient plausible facts to put a defendant on notice of the claims against him. Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009). The complaint "must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above a speculative level.'" Doe v. Village of Arlington Heights, 782 F.3d 911, 914 (7th Cir. 2015) (quoting Twombly, 550 U.S. at 555, 570). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citations and quotation marks omitted). In reviewing the Plaintiff's claim, the court "must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011).

When, as here, a party alleges fraud, Federal Rule of Civil Procedure 9(b) requires them to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "The plaintiff must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" United States ex rel. Berkowitz v. Automation Aids, Inc., 896 F.3d 834, 839

(7th Cir. 2018) (quoting <u>United States Lusby v. Rolls-Royce Corp.</u>, 570 F.3d 849, 853 (7th Cir. 2009)).

### III. DISCUSSION

The Court begins by discussing Plaintiff's ultimate theory of deception under the IFCA in three stages. First, the Court finds that Plaintiff has not plausibly shown that his definition of chocolate aligns with the expectations of a reasonable consumer. Second, the Court finds that Plaintiff has not plausibly shown that the Product's coating contains more vegetable oils than chocolate. In fact, Plaintiff's alleged facts and calculations suggest that there is more chocolate than vegetable oils. Finally, the Court addresses Plaintiff's *de minimis* and quality arguments. The Court concludes that Plaintiff has not alleged a plausible deception as a matter of law.

Next, the Court addresses Plaintiff's other counts. Ultimately, the court finds these claims are based on the same theory of deception as Plaintiff's ICFA claim and should be dismissed on those grounds. However, the Court also finds separate grounds to support dismissal for some of the other state law claims.

### A. *Illinois Consumer Fraud and Deceptive Business Practices Act*

To survive a Rule 12(b)(6) motion under the ICFA, a plaintiff must allege that the "defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." <u>Vanzant v. Hill's Pet Nutrition, Inc.</u>, 934 F.3d 730, 736 (7th Cir. 2019) (<u>citing</u> <u>Siegal v. Shell Oil Co.</u>, 612 F.3d 932, 934–35 (7th Cir. 2010)).[1]

---

[1] There are two kinds of conduct under the ICFA – deceptive conduct and unfair conduct. Both carry a different pleading standard. <u>Vanzant</u>, 934 F.3d at 738. But here, Plaintiff only alleges deceptive conduct.

To sufficiently allege deceptive conduct, a plaintiff must show "conduct that plausibly could deceive a reasonable consumer." Hayes v. Gen. Mills, Inc., No. 19-cv-05626, 2021 WL 3207749, at *2 (N.D. Ill. July 29, 2021) (quoting In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig., 275 F. Supp. 3d 910, 920–21 (N.D. Ill. 2017)). The deceptive act "must be looked upon in light of the totality of the information made available to the plaintiff." Id. (citing Davis v. G.N. Mortg. Corp., 396 F.3d 869, 884 (7th Cir. 2005)). And although an ICFA claim may "involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." Iborrola v. Kind, LLC, 83 F. Supp. 3d 751 (N.D. Ill. 2015) (citing Bober v. Glaxo Wellcome PLC, 246 F.3d 934, 940 (7th Cir. 2001)). A court may find a statement is not misleading as a matter of law where plaintiff's claims are "fanciful interpretations of labels or other advertising." Bell v. Publix Super Markets, Inc., 982 F.3d 468, 477 (7th Cir. 2020) (collecting cases).

### 1. The Issue Is What a Reasonable Consumer Expects "Chocolate" to Mean

The issue before the Court is whether the alleged predominance of vegetable oils over cacao bean ingredients renders the Product's coating not "chocolate" in the eyes of a reasonable consumer, making the label misleading. See Hayes, 2021 WL 3207749, at *2.

Plaintiff argues that the Product's label is misleading to a reasonable consumer because the chocolate coating is comprised mainly of vegetable oils rather than of mostly or entirely chocolate ingredients from cacao beans. Dkt. 1 ¶¶ 44, 114. According to Plaintiff, to be considered chocolate, the coating must be made up of cacao bean ingredients. Id. ¶ 56 ("Chocolate has two main components – cocoa solids and cocoa butter."). Plaintiff does not define "cocoa butter" or "cocoa

solids," but these are both made from cacao beans.[2] Plaintiff relies on his mathematical application of the FDA regulations to the Product's ingredient list to argue that there are more vegetable oils than cacao bean ingredients. Id. ¶¶ 48–52. According to Plaintiff, vegetable oils are the "opposite of chocolate." Id. ¶ 44. By his reasoning, because there are more vegetable oil ingredients by weight than cacao bean ingredients, the Product's coating is not chocolate. In short, it is misleading to label something "chocolate" that is not chocolate.

On the other hand, Defendant argues that Plaintiff's vegetable oil assertion is baseless because the numbers Plaintiff assigns to each ingredient are completely imaginary, arbitrarily assigned, and hypothetical. Dkt. 10-1 at 7. Defendant suggests that these numbers do not reflect the actual proportions of the ingredients and that an alternate set of weights could be shown to "place the [weight of] chocolates ahead of the oils." Dkt. 10-1 at 5. Defendant states that the Court need not credit these numbers. Id. at 5. Citing Weaver v. Champion Petfoods USA Inc., 3 F.4th 927 (7th Cir. 2021), Defendant argues that references to an ingredient in a product does not imply that that ingredient is used exclusively, proposing that no reasonable consumer would interpret "chocolate" as the exclusion of other ingredients like vegetable oil. Id. at 10.

### 2. Plaintiff Has Not Plausibly Shown That a Reasonable Consumer Would Expect Chocolate to Be Made of Mostly or Only from Cacao Bean Ingredients

Whether Defendant's label could "plausibly deceive a reasonable consumer" depends on what chocolate means to a reasonable consumer, not what it means to Plaintiff. Hayes, 2021 WL 3207749, at *2. Plaintiff's claim that consumers "expect chocolate to be made from cacao beans"

---

[2] Merriam-Webster defines "cocoa butter" as a pale vegetable oil fat with a low melting point obtained from cacao beans." *Cocoa butter*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/cocoa%20butter (last visited July 21, 2022); Cocoa is "powdered ground roasted cacao beans from which a portion of the fat has been removed." *Cocoa*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/cocoa (last visited July 21, 2022).

does not mean that reasonable consumers expect it to be made without anything else. Dkt. 1 at 3; Cf. Weaver v. Champion Petfoods USA Inc., 3 F.4th 927, 937 (7th Cir. 2021) ("Several district courts have held that references to ingredients used do not imply that ingredient is used exclusively").[3] And Plaintiff does not claim that the chocolate coating does not, in fact, contain cacao bean ingredients.

On a motion to dismiss, the Court need not accept the conclusion that a reasonable consumer would read the Product's "chocolate" labeling to imply that the chocolate would be made mostly or entirely of cacao bean ingredients. See Wach v. Prairie Farms Dairy, Inc., No. 21 C 2191, 2022 WL 1591715, at *3 (N.D. Ill. May 19, 2022) ("[Plaintiff's] allegations about consumer expectations – i.e. that a reasonable consumer would expect a product labeled 'Premium Vanilla Ice Cream' to contain a non-negligible amount of extracts from vanilla beans or to include real vanilla flavoring—are conclusory statements I need not accept.") (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Nor does the label itself promise that the chocolate will be made mostly or entirely of cacao bean ingredients. Cf. Bell, 982 F.3d at 482 (holding that it was plausible on a motion to dismiss for a reasonable consumer to believe that "100% Grated Parmesan Cheese" promised 100% cheese).

That "roughly sixty percent of respondents who viewed the Product's front label . . . expected it would contain more cacao bean ingredients than it did and would not be made with chocolate substitutes" is not the same thing as saying that these same respondents concluded that the Product's coating was not chocolate or that they believe chocolate must be made mostly or

---

[3] Plaintiff extensively argues that Defendant's citation of Weaver is inapposite because the case was decided on a motion for summary judgment, not a motion to dismiss. Dkt. 12 at 10–11. But these cases cited in Weaver were all decided on a motion to dismiss. See, e.g., Kennedy v. Mondelēz Glob. LLC, No. 19-cv-302, 2020 WL 4006197, at *1 (E.D.N.Y. July 10, 2020) ("Defendant . . . has moved to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6)."). Accordingly, the Court finds the cases the Weaver court cited to be persuasive.

exclusively from cacao bean ingredients. Dkt. 1 at 25. Other district courts have likewise grappled with substantially similar surveys made by the same attorney and have come to similar conclusions. See, e.g., Puri v. Costco Wholesale Corporation, Case No. 5:21-cv-01202, 2021 WL 6000078, at *7 (N.D. Cal. December 20, 2021) ("These barebones allegations do not include important details such as exactly what questions the survey asked or what its methodology entailed. Nor does this survey's result support [plaintiff]'s primary assertion, which is that to be properly considered 'chocolate,' a product must be made chiefly from cacao beans"[4]); see also Beers v. Mars Wrigley Confectionary US, LLC, No. 21-CV-2, 2022 WL 493555, at *6 (S.D.N.Y. February 17, 2022) ("Plaintiff does not represent that the consumers in the survey would expect the Product . . . to contain no other ingredients apart from chocolate made from cacao bean ingredients."); Mitchell v. Whole Foods Market Group, Inc., 20 Civ. 8496, 2022 WL 657044, at *7 (S.D.N.Y. March 4, 2022) ("[Plaintiff]'s barebones allegations, without any factual support, fail to plead what questions were asked and what methodology was used in the survey.").

Accordingly, Plaintiff has not alleged sufficient facts to show that his definition of chocolate aligns with a reasonable consumer's expectations. That does not end the inquiry, however, because the Product's label could plausibly be deceptive if the coating does contain more vegetable oils than chocolate.

### 3. A Reasonable Consumer Would Expect Other Ingredients in Chocolate, Such as Milk and Sugar, Implying the Coating Is More Chocolate Than Vegetable Oils

---

[4] Plaintiff argues that the Puri decision is distinguishable because the complaint "does not contain similar allegations" that chocolate must be made "chiefly" from cacao beans. Dkt. 12 at 12. We agree with Defendant that Plaintiff's core argument is substantially the same. Dkt. 12 at 16 ("Plaintiff wanted . . . a coating that contained mostly or all ingredients from cacao beans.").

Plaintiff contends that the Defendant's label is misleading because there is more vegetable oil than chocolate in the Product's coating. Dkt. 1 ¶ 44. On a motion to dismiss, the Court must draw "all reasonable inferences in the Plaintiff's favor" Virnich, 664 F.3d 206 at 212. Yet Plaintiff's factual allegations do not reasonably support the inference that a consumer considers "chocolate" to mostly or exclusively contain cacao bean ingredients. Rather, Plaintiff's alleged dictionary definitions of chocolate and the chocolate-making process suggest reasonable consumers would expect ingredients other than cacao, like sugar, in their chocolate.

Three of four of Plaintiff's cited dictionary definitions of chocolate include sweeteners, and sugar sweetens chocolate. (Dictionary.com - "*often sweetened*"; Cambridge Dictionary - "a *sweet* . . . food"; Google - "*typically sweetened*") (emphasis added). Plaintiff's description of how chocolate is made likewise includes the combination of cacao ingredients with sweeteners and dairy ingredients. Dkt. 1 ¶¶ 6–7 ("To make chocolate . . . [cacao nibs] are ground to produce cocoa mass or chocolate liquor *and then combined with dairy ingredients, sweeteners and flavorings*") (emphasis added). Just as Plaintiff's own definitions and description of the chocolate-making process include sweeteners and dairy products, so too would a reasonable consumer's expectation include sweeteners and dairy products. That the Plaintiff argues that the FDA regulations only include "small amounts" of dairy products and sweeteners does not help his case because "average consumers are not likely to be aware of the nuances of the FDA's regulations." Bell, 982 F.3d at 482. Nor has Plaintiff shown that a reasonable consumer would conclude that because dairy products and sugar appear as separate ingredients in the coating, that a reasonable consumer would infer they are separate from chocolate. See id. at 477 ("[T]he reasonable consumer standard does not presume, at least as a matter of law, that reasonable consumers will test prominent front-label claims by examining the fine print on the back label.").

12

If these ingredients—sugar and nonfat dry milk—are included in Plaintiff's calculations to match a reasonable consumer's expectation of chocolate, the result is strikingly different:[5]

|  | Amounts (g) | Percentage of Coating |
|---|---|---|
| Total Vegetable Oils | 15 | 30.6% |
| **Total Cacao Bean Ingredients** | **12** | **24.5%** |
| **Other Chocolate Ingredients (Sugar, Nonfat Dry Milk)[6]** | **18** | **36.7%** |
| Soy Lecithin | 4 | 8.2% |

Including the cacao bean ingredients with other ingredients that make up the chocolate coating, the Product is 61.2% chocolate, much more than the vegetable oils at 30.6%. Accordingly, the Product's label could not plausibly deceive a reasonable consumer on the theory that the Product's coating contains more vegetable oils than chocolate. Plaintiff makes two more arguments, which the Court discusses below.

### 4. Plaintiff's Other Arguments

Plaintiff also alleges that the Product label is further misleading because the picture of chocolate chunks alongside vanilla and almonds in the bottom center portion of the front of the label "tells consumers the Product will contain non-de minimis amounts of these highlighted ingredients." Dkt. 1 ¶ 62. Plaintiff does not allege what he means by *de minimis*, but his argument fails, nonetheless. An alleged deceptive act "must be looked upon in light of the totality of the information made available to the plaintiff." Hayes, 2021 WL 3207749, at *2. The other information made available to the Plaintiff is that those chocolate chunks are "presented with . . .

---

[5] The Court assumes, without deciding, the correctness of Plaintiff's mathematical logic to conclude the Product contains more vegetable oil than cacao bean ingredients.

[6] Sugar is given a hypothetical weight of 10g; Nonfat Dry Milk, 8g. (10g+8g = 18g). Dkt. 1 ¶ 48.

other ingredients – vanilla beans and flowers and almonds." Dkt. 1 ¶ 1. Since the chunks are presented alongside other ingredients, they serve as an indication of what ingredients will be in the Product, not of how much. And chocolate is indisputably an ingredient in the Product. Even if the chunks are interpreted as warranting quantity, the amount of chocolate by Plaintiff's own calculations is over 60%, as discussed above. Whatever Plaintiff's definition of *de minimis* is, there is a substantial amount of chocolate in the Product's coating.

Finally, Plaintiff alleges that vegetable oil eliminates the creamy and smooth taste of chocolate and creates a "waxy and oily mouthfeel." Dkt. 1 ¶¶ 32–33. Plaintiff states that he "wanted more than a 'chocolatey' taste," but received a waxy and oily taste instead. That Plaintiff expected and did not receive "more than a 'chocolatey'" taste is irrelevant unless a reasonable consumer would expect the same. Plaintiff has not sufficiently alleged that a reasonable consumer's expectation of chocolate's taste is the same as his or that the Product did not taste like chocolate. The Product label makes no assertion as to the quality of the chocolate taste or mouthfeel by simply labeling it "chocolate." Plaintiff's allegation that it does is the kind of "fanciful interpretation" of a product's label that warrants dismissal. Bell, 982 F.3d at 477 (7th Cir. 2020).

### 5. The Product's Label Is Not Misleading as a Matter of Law

Here, the issue is what a reasonable consumer expects "chocolate" to mean. Plaintiff alleges that the Product contains more vegetable oils than chocolate, which makes the Product's label misleading. To survive a motion to dismiss, Plaintiff must show the Product's label could plausibly be misleading to a reasonable consumer. Hayes, 2021 WL 3207749, at *2. Plaintiff has not plausibly shown that a reasonable consumer would expect chocolate to mostly or only include cacao bean ingredients at the exclusion of other ingredients, such as milk and sugar. In fact,

Plaintiff's cited dictionary definitions, coupled with how chocolate is made, suggest that a reasonable consumer would expect milk and sugar in chocolate. And Plaintiff's own calculations bare out that the coating is mostly chocolate. Accordingly, Defendant's label is not misleading as a matter of law and should be dismissed. Iborrola v. Kind, LLC, 83 F. Supp. 3d 751 (N.D. Ill. 2015).

## B. *Breach of Express Warranty, Implied Warranty of Merchantability, and Magnuson Moss Warranty Act*

Plaintiff's claims for breach of express and implied warranty of merchantability and the Magnuson Moss Warranty Act ("MMWA") are premised on the same theory of deception as his ICFA claim. Dkt. 1 ¶ 119 ("[D]efendant . . . expressly and impliedly warranted to plaintiff and class members that it's [sic] coating contained mostly or all chocolate ingredients from cacao beans instead of mainly substitutes such as vegetable oils."); Dkt. 12 at 18 (Plaintiff arguing that Product was not merchantable for the same reason). Accordingly, because Plaintiff's theory of deception fails, his theories of breach of express and implied warranty and the MMWA also fail. See Wach v. Prairie Farms Dairy, Inc., No. 21 C 2191, 2022 WL 1591715, at *6 (N.D. Ill. May 19, 2022) (finding that Plaintiff's breach of express and implied warranty and MMWA fail because they were "premised on the assertion that the Product's labeling is false, deceptive, and misleading.").

Defendant also raises the issue that Plaintiff failed to provide pre-suit notice. Dkt. 10-1 at 13–15. Both claims of breach of express and implied warranties require that a seller be notified of the breach. Rudy v. Family Dollar Stores, Inc., No. 21-CV-3575, 2022 WL 345081, *6–7 (N.D. Ill. February 4, 2022). The MMWA creates a federal cause of action based on a breach of express and implied warranty under state law. 15 U.S.C. § 2310(d)(1). If the express warranty and implied warranty claims fail, the MMWA claim fails as well. Zylstra v. DRV, LLC, 8 F.4th 597, 609 (7th

Cir. 2021) ("The MMWA depends on the existence of an underlying viable state-law warranty claim.").

Under the Uniform Commercial Code, applicable in Illinois, a plaintiff must provide a defendant with notice of a breach of warranty "within a reasonable time after he discovers or should have discovered any breach." 810 ILCS 5/2-607(3)(a). Pre-suit notice is required unless the plaintiff can show that they suffered a personal injury or that the defendant had actual knowledge of the alleged defect. Anthony v. Country Life Manufacturing, LLC, 70 Fed. Appx. 379, 384 (7th Cir. 2003) (citing Connick v. Suzuki Motor Co., Ltd., 174 Ill.2d 482, 492 (1996)). Notably, "[a] manufacturer's knowledge of its own ingredients is insufficient under Illinois law to constitute actual knowledge." DeBernardis v. NBTY, Inc., Case No. 17 C 6125, 2018 WL 461228, at *3 (N.D. Ill. January 18, 2018). The actual knowledge exception to pre-litigation notice applies to the defendant's knowledge of the *particular plaintiff's* claim and "is satisfied only when the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." DeBernardis, 2018 WL 461228, at *3 (quoting Country Life Manufacturing, LLC, 70 Fed. Appx. at 384). A failure to allege sufficient notice is fatal to a plaintiff's breach of warranty claims. Connick, 174 Ill.2d at 495.

Plaintiff contends he provided Defendant with notice by filing this action. Dkt. 12 at 17. The Plaintiff's complaint alleges that "Plaintiff provided or will provide notice to defendant." Dkt. 1 ¶ 122. Plaintiff then alleges that he provided Defendant notice "through this action in July 2021." Dkt. 12 at 17. Accordingly, the earliest Plaintiff provided notice when he commenced this action, which is not pre-suit notice. Filing a complaint is not sufficient to provide notice of a breach of warranty under Illinois law. Country Life Manufacturing, LLC, 70 Fed. Appx. at 384. Plaintiff does not allege a personal injury, so the actual knowledge exception is the last line of defense.

Plaintiff argues that "Defendant had actual knowledge of the Product's composition by conceding that 'vegetable oils are separate ingredients'" in the Product's coating. Dkt. 12 at 17. But a defendant-manufacturer's knowledge of a product's ingredients is not enough to constitute actual knowledge. DeBernardis, 2018 WL 461228, at *3. That "Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers" is not the same thing as Defendant's knowledge of the Plaintiff's particular claim. Id.; Dkt. 1 ¶ 123. Because Plaintiff has not shown that he provided Defendant with pre-suit notice or that Defendant had actual knowledge of Plaintiff's particular claim, Plaintiff's breach of warranty claims fail. And because the Plaintiff's breach of warranty claims fail, his MMWA claim fails as well. Zylstra v. DRV, LLC, 8 F.4th 597, 609 (7th Cir. 2021).

### C. *Negligent Misrepresentation*

To state a claim for negligent misrepresentation under Illinois law, a plaintiff must allege six elements, "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." Tricontinental Industries, Ltd. V. PricewaterhouseCoopers, LLP, 475 F.3d 824, 833–34 (7th Cir. 2007) (quoting First Midwest Bank, N.A. v. Stewart Title Guar. Co., 218 Ill.2d 326, 334–35 (2006)). Economic loss alone is not a sufficient basis for a negligence cause of action in Illinois. Clay Financial LLC v. Mandell, No. 16 C 11571, 2017 WL 3581142, at *4 (N.D. Ill. August 18, 2017) (citing Moorman Mfg. Co. v. Nat'l Tank Co., 91 Ill.2d 69 (1982)). There are two exceptions to this general rule, called Moorman exceptions. The first Moorman exception states that economic loss is recoverable when "one intentionally makes false representations." Id.

17

(citing Moorman, 91 Ill.2d at 88). The second exception is "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." Id. (citing Moorman, 91 Ill.2d at 88–89). For this exception to apply, the defendant must be "in the business of supplying information" rather than "providing something tangible." First Midwest Bank, N.A., 218 Ill.2d at 339 (citation omitted). If the "end result" of the relationship with the defendant is a tangible product, the defendant is not in the "business of supplying information." Hartford Ins. Co. v. Henry Bros. Constr. Management, LLC, 877 F. Supp. 2d 614, 620 (N.D. Ill. 2012) (citing 2314 Lincoln Park West Condo. Assoc. v. Mann, Gin, Ebel & Frazier, 136 Ill.2d 302, 313 (1990)).

The Court finds Plaintiff has not shown a "false statement" required by the first element of the claim, so Plaintiff's claim for negligent misrepresentation is dismissed. See Part III.A, supra. Separately, Plaintiff's claim for negligent misrepresentation fails because Plaintiff alleges only economic damages Dkt. 1 ¶ 130 ("Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages."). Plaintiff has not shown that either Moorman exception applies here. First, Plaintiff has not demonstrated there was a plausible misrepresentation. Plaintiff argues in his response to Defendant's motion to dismiss that the second Moorman exception applies because Defendant held itself out as having "special knowledge or experience in this area," which created a duty to "provide non-deceptive information." Dkt. 12 at 13 (quoting Congregation of the Passion, Holy Cross Province v. Touche Ross & Co., 159 Ill.2d 137 (1994)). This is mistaken. The end result between the Plaintiff and Defendant's relationship was a bar of ice cream, a tangible object. Accordingly, Defendant was not in the business of supplying information, so Plaintiff has not shown the second Moorman exception applies.

### D.    _Common Law Fraud_

Common law fraud requires that a plaintiff show that "(1) a defendant made a false statement; (2) of material fact; (3) which defendant knew or believed to be false; (4) with the intent to induce a plaintiff to act; (5) the plaintiff justifiably relied on that statement; and (6) the plaintiff suffered damages from such reliance." Houben v. Telular Corp., 231 F.3d 1066, 1074 (7th Cir. 2000) (citation omitted). "[A] plaintiff justifiably relies on a defendant's statement of facts where 'circumstances were such to make it reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation.'" Equity Builders and Contractors, Inc. v. Russel, 406 F. Supp. 2d 882, 889 (N.D. Ill. 2005) (quoting InQuote Corp. v. Cole, No. 99 C 6232, 2000 WL 1222211, at *3 (N.D. Ill. August 24, 2000)). When a plaintiff alleges fraud, Federal Rule of Civil Procedure 9(b) applies, and Plaintiff must allege the "who, what, where, when, and how" of the deception. United States ex rel. Berkowitz v. Automation Aids, Inc., 896 F.3d at 839. The parties do not dispute that Plaintiff has met his burden under 9(b).

The parties focus their argument on whether Plaintiff's reliance on the statement "Chocolate . . . . Dipped" was justified. Dkt. 10-1 at 17; Dkt. 12 at 19. But that focus is overshadowed by the parties' disagreement of what the statement means. Dkt. 10-1 (Defendant claiming Plaintiff's reliance was unjustified because it rests on the "erroneous belief that the statement implied an ingredient claim"); Dkt. 12 (Plaintiff claiming reliance was justified because there is "no reason Plaintiff should expect chocolate substitutes when offered a product with a self-described 'Chocolate' coating'"). An argument over what a statement means is an issue of whether the statement was false, not whether it was justifiable to rely on it. The Court finds that Plaintiff has not shown the Product's label was deceptive. Accordingly, Plaintiff's fraud claim fails.

### E. *Unjust Enrichment*

Unjust enrichment is not a separate cause of action in Illinois. <u>Vanzant</u>, 631 F.3d at 447. Under Illinois law, unjust enrichment is a "condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud." <u>Mashallah, Inc. v. West Bend Mut. Ins. Co.</u>, 20 F.4th 311, 324 (7th Cir. 2021) (<u>citing</u> <u>Toulon v. Cont'l Casualty Co.</u>, 877 F.3d 725, 741 (7th Cir. 2017)).

Both parties agree that the Plaintiff's unjust enrichment claim is predicated on the Plaintiff's fraud claim. Dkt. 10 at 17; Dkt. 12 at 20. Because Plaintiff's fraud claim fails, Plaintiff's claim for unjust enrichment also fails and is dismissed.

### F. *Other Disputes*

The parties disagree whether Plaintiff's state-law claims are preempted by the Food, Drug, and Cosmetic Act ("FDCA"). The Court does not reach this issue because regardless of whether Plaintiff's claims are preempted by the FDCA, Plaintiff's state-law claims fail of their own accord.

Defendant also raises the separate issue that Plaintiff may not enforce the FDCA because it does not create a private cause of action. Dkt. 10-1 at 9. But it is unclear whether Plaintiff is attempting to enforce the FDCA. Dkt. 12 at 14 ("Defendant's description of Plaintiff's allegations as an attempt 'to enforce violations of the FDCA' is misplaced."). To be sure, Plaintiff may not enforce the FDCA "even if [he] wanted to." <u>Cerretti</u>, 2022 WL 1062793, at *4 n.7 (<u>citing</u> 21 U.S.C. § 337(a) and <u>Benson v. Fannie May Confections Brands, Inc.</u>, 944 F.3d 639, 645 (7th Cir. 2019)). At best, Plaintiff's gesturing to federal regulations surrounding food labeling supports his theory that consumers would be misled. Dkt. 12 at 15 ("[C]onsumers, including Plaintiff, were not misled because Defendant violated FDA regulations."). And as discussed, that does not help his case

much, if at all, because "average consumers are not likely to be aware of the nuances of the FDA's regulations." Bell, 982 F.3d at 481.

Finally, the parties dispute whether Plaintiff has standing for injunctive relief. The Court concludes that Plaintiff has not stated a claim upon which relief can be granted. Accordingly, the Court does not reach the argument for whether Plaintiff has standing to claim injunctive relief

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is granted. A district court should generally grant leave to amend a complaint after granting a motion to dismiss unless any amendment would be futile or otherwise unwarranted. Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana, 786 F.3d 510, 520 (7th Cir. 2015). As the Runnion court noted, these instances are "rare," but the Court finds this is one such. Id. Plaintiff alleged an unreasonable interpretation of what "chocolate" includes, and no set of alleged facts could change the Court's ruling. Amending the complaint would be futile. The Defendant's motion is granted, the case is dismissed with prejudice, and the case is terminated.


IT IS SO ORDERED:                    ENTER:


                                     _____
                                     CHARLES RONALD NORGLE, Judge
                                     United States District Court


DATE: July 21, 2022